In the Matter of the Estate of TIMOTHY MAHONEY, Deceased.   JOHN MAHONEY et al., Legatees, Appellants. A. C. FREESE, Public Administrator, Respondent.

COLLATERAL INHERITANCE TAX — NIECES AND NEPHEWS — AMENDMENT OF 1897 — CONSTITUTIONAL LAW. — The amendment of 1897 to the collateral inheritance tax law (Stats. 1897, p. 77), so far as purporting to exempt therefrom nieces and nephews when residents of the state, is in conflict with section 2 of article IV of the constitution of the United States, and with section 1978 of the Revised Statutes of the United States, and is void; and by virtue of the invalidity of that amendment, all nieces and nephews were left subject to the collateral inheritance tax, as provided prior thereto.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. V. Coffey, Judge.

The facts are stated in the opinion.

James Gartland, for Appellants.

Tirey L. Ford, Attorney-General, William M. Abbott, Deputy Attorney-General, and J. D. Sullivan, for Respondent.

GRAY, C. — The decedent left all his estate by will to his ten nephews and nieces, all of whom are non-residents of the state of California, three of them residing in the state of New York and seven in Ireland.   Seven of the said nieces and nephews appeal, — 1. From that portion of the decree of final distribution herein which deducts five per cent from their respective distributive shares for collateral inheritance tax, and 2. From that portion of said decree which deducts a further sum of one dollar and ninety cents on each one hundred dollars for taxes claimed to be due on said estate.

1. Appellants contend that legacies to nephews and nieces are exempt from the collateral inheritance tax, whether they reside in this state or not.   This contention cannot be upheld without a violation of the clearly expressed intention of the legislature.   The collateral inheritance tax law of this state, as it originally existed, is to be found in the Statutes of 1893 (p. 193).   It provided that all property of an estate valued at

five hundred dollars or more, which shall pass by will, or by the intestate laws of this state, other than to or for the use of certain relatives of the decedent named in the statute, shall be subject to the said tax. Nephews and nieces are not named among the relatives who are exempt from the tax. The act was amended in 1897, however, so as to exempt "nieces and nephews when a resident of this state," from the said tax. (See Stats. 1897, p. 77.) In so far as the statute as thus amended affects the questions involved in this case, it reads as follows:—

"Section 1. After the passage of this act, all property which shall pass by will, . . . other than to the use of his or her father, mother, husband, wife, lawful issue, brother, sister, *and nieces or nephews when a resident of this state*, . . . shall be and is subject to a tax of five dollars on every one hundred dollars of the market value of such property, . . . for the use of the state; . . . provided, that an estate which may be valued at a less sum than five hundred dollars shall not be subject to such duty or tax."

In 1899 the legislature again amended the said act, and left out the clause exempting nieces and nephews from the tax. The present case rests upon the law as it stood prior to this last amendment, and as it was amended in 1897. The language of the statute as amended in 1897 shows that it was the purpose of the framers of the law that nieces and nephews non-resident of the state should be subject to the tax; and if, as contended for by appellants, we eliminate from the statute the clause, "when a resident of the state," and leave in the words, "and nieces and nephews," we establish a law as to nieces and nephews non-resident of this state, in direct opposition to the apparent legislative intent. This we may not do. Where there are two provisions in a statute, the one constitutional and the other one not, the unconstitutional provision may be rejected and the other stand, but here there is but one provision in question, and, being clearly unconstitutional, it should be rejected as a whole, and held invalid.

In *Spraigue* v. *Thompson*, 118 U. S. 90, it was held that a section of the Georgia code which reads as follows: "Any person, master, or commander of a ship or vessel bearing toward any of the ports or harbors of this state, except coasters in this state, and between the ports of this state and those of South Carolina, and between the ports of this state and those

of Florida, who refuses to receive a pilot on board, shall be liable, on his arrival in such port in this state, to pay the first pilot who may have offered his services outside the bar, and exhibited his license as a pilot, if demanded by the master, the full rates of pilotage established by law for such vessel,"—conflicts with the constitution of the United States, and is annulled .and abrogated by the provision in section 4237 of the Revised Statutes, that "no regulations or provisions shall be adopted by any state which shall make any discrimination in' the rate of pilotage or half-pilotage between vessels sailing between the ports of one state and vessels sailing between the ports of different states, or any discrimination against vessels propelled in whole or in part by steam, or against national vessels of the. United States; and all existing regulations or provisions making any such discrimination are annulled and abrogated."

We quote from the opinion of the court by Mr.. Justice Matthews, as follows: "It was held, however, by the supreme court of Georgia, in the case now before us, that so much of the section as makes these illegal exceptions may be disregarded, so that the rest of the section as thus read may stand, upon the principle that a separable part of a statute, which is unconstitutional, may be rejected, and the remainder preserved and enforced. But the insuperable difficulty with the application of that principle of construction to the present instance is, that by rejecting the exceptions intended by the legislature of Georgia the statute is made to enact what confessedly the legislature' never meant. It confers upon the statute a positive operation beyond the legislative intent, and beyond what any one can say it would have enacted in view of the illegality of the exceptions. We are therefore constrained to hold that the provisions of section 1512 of the code of Georgia cannot be separated so as to reject the unconstitutional exceptions merely, and that the whole section must be treated as annulled and abrogated by section 4237 of the Revised Statutes."

In *People* v. *Perry*, 79 Cal. 105, at page 115, the court said: "But we know of no precedent for holding that a clause of a statute, which, as enacted, is unconstitutional, may be changed in meaning in order to give it some operation, when admittedly it cannot operate as the legislature intended. This would, it seems to us, be making a law, and not merely correcting an excess of authority."

Again, in Cooley on Constitutional Limitations, at page 211, the author says: "The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is, not whether they are contained in the same section, — for the distribution into sections is purely artificial, — but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance *with the apparent legislative intent*, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated, within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish *a single object only*, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion."

Authorities might be multiplied, all showing that a statute cannot, because it is in conflict with the constitution, be so limited or altered by the court as to make a law beyond or contrary to the apparent purpose of the legislature. *In re Stanford's Estate* (as decided in Department), 54 Pac. Rep. 259, is not an authority upon the question here discussed, because a rehearing in that case was had, and a conclusion differing from that of the Department, and based on different grounds, was reached by the court in Bank. (*Estate of Stanford*, 126 Cal. 112.)

We are of the opinion that the amendment of 1897 of the collateral inheritance statute, so far as it relates to nieces and nephews, is in conflict with the provisions of section 2, article IV, of the constitution of the United States, providing that the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states, as well as with section 1978 of the United States Revised Statutes, providing that all citizens of the United States shall have the same right in every state as is enjoyed by the white citizens thereof to inherit property, and for that reason the amendment in that respect is void, and should be disregarded, thus leaving nieces

and nephews subject to the collateral inheritance tax, as they were before said attempted amendment.

2. It appears that the estate consisted entirely of money, and that it had been kept on deposit by the executor with the California Safe Deposit and Trust Company, and it is contended that it was the duty of the assessor to assess the money to said trust company, and it was the duty of said company to pay the tax thereon, and it will be presumed that the assessor performed his official duty. It is not necessary to determine any branch of this contention. The trust company was not a party to the proceedings, and its rights and duties could not therefore be determined in the matter. There is no showing in the bill of exceptions that the taxes in question had been paid by anybody, and the last order of the court, made *nunc pro tunc*, shows that taxes to the amount of one dollar and ninety cents on each one hundred dollars are claimed to be due upon said estate, and it is ordered by the trial court that the administrator retain that amount in his possession. It will not be presumed that the taxes have been paid, in the absence of a showing to that effect; and sections 3752 of the Political Code and 1669 of the Code of Civil Procedure make it the duty of the court to see to it that the taxes are paid. On the record before us we can see no error in the action of the court directing the administrator to retain the amount of the taxes claimed.

For the foregoing reasons we advise that the portions of the decree appealed from be affirmed.

Smith, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the portions of the decree appealed from are affirmed.

Garoutte, J.,     Henshaw, J.,     Temple, J.
Van Dyke, J.,     McFarland, J.,