[L. A. Nos. 5055, 5056.   In Bank.—March 22, 1917.]

## In the Matter of the Estate of FREDERICK E. JEPSON, Deceased.

ESTATE OF DECEASED PERSON—INTESTACY—SUCCESSION BY NEPHEWS AND NIECES—INTESTATE HAVING SURVIVING SPOUSE.—Under subdivisions 4 and 2 of section 1386 of the Civil Code, as amended in 1905, nephews and nieces of an intestate who died leaving a surviving spouse but neither issue, father, mother, brother or sister, succeed to a part of his estate, which previous to the amendment they did not do except in the event that a brother or sister survived the intestate.

MOTION to dismiss appeals from orders of the Superior Court of Los Angeles County setting aside a homestead and dismissing a contest to the application to set aside such homestead.   James C. Rives, Judge.

The facts are stated in the opinion of the court.

Fred N. Arnoldy, and Stewart & Stewart, for Appellants.

Frank Stewart, and J. W. Howell, for Respondent.

HENSHAW, J.—Frederick E. Jepson, upon his death, intestate, left surviving him a widow, but neither issue, nor father, nor mother, nor brother, nor sister. He did, however, leave nephews and nieces, children of deceased brothers and sisters. The widow made application to the court in probate to have set apart to her a homestead. These nephews and nieces filed a contest. Their contest was dismissed by the court in probate, upon the ground that they were not parties in interest. The court made its order setting aside

a homestead to the widow. The nephews and nieces have appealed from both of these orders and their appeals are met with this motion to dismiss upon the ground indicated, namely, that they are not parties in interest.

The question, then, is this: If these nephews and nieces under our law of succession have no inheritable interest in the estate of the deceased, they are not interested in the widow's application for a homestead and these appeals should be dismissed. The argument that they have no inheritable interest and are, therefore, not parties in interest, is founded upon the construction which this court gave to subdivisions 2 and 5 of section 1386 of the Civil Code as those subdivisions read before their amendment in 1905, the further contention being advanced that the amendments of 1905 have not changed the law so as to give such nephews and nieces an inheritable interest which before the amendments was not theirs. The cases referred to are *Estate of Ingram,* 78 Cal. 586, [12 Am. St. Rep. 80, 21 Pac. 435], *Estate of Carmody,* 88 Cal. 616, [26 Pac. 373], and *Estate of Nigro,* 149 Cal. 702, [87 Pac. 384]. In each of those cases this court was construing, as it was compelled to do, subdivision 2 of section 1386, under the limitations upon that subdivision imposed by the language of subdivision 5 of the same section. By the amendments of 1905 subdivision 5 has become subdivision 4, and for convenience in exposition we will here deal with subdivision 4, it always being borne in mind that in the cases above cited it was, and was called, subdivision 5.

What, then, were these cases? The first of them, the *Estate of Ingram, supra,* is the only one calling for analysis, since the other two simply follow the construction placed on the law in the *Estate of Ingram.* The *Estate of Ingram* presented precisely the situation that exists in the present case. There was no surviving father or mother; there was no surviving brother or sister, but there were surviving children of a deceased sister. At that time subdivision 4 (then subdivision 5) declared in effect that the whole estate of a spouse dying intestate went to the surviving spouse, unless the deceased spouse left either issue, or a father or a mother, or a brother or a sister. It stopped there. Therefore by this unequivocal language, if no one of these persons was in being, the right of the surviving spouse to take all of the estate was absolutely fixed. To determine the disposition which the law

made of an estate under these circumstances when there were
not such survivors, the judge in probate primarily, and this
court in review, turned to the language of subdivision 2.
Subdivision 1 made provision for the case where a deceased
spouse left issue as well as a surviving spouse. Subdivision
2 treated of the disposition of the estate in the other con-
tingencies contemplated by subdivision 4, and it declared that
if the deceased spouse left father and mother or father or
mother, one-half of the estate should go to them or the sur-
vivor of them. If there was neither father, nor mother, then
the one-half of the estate, which otherwise would have gone
to them, went to the living brothers and sisters ''and to the
children of any deceased brother or sister by right of repre-
sentation.'' What, then, was the inevitable and necessary
construction of these laws forced upon this court? It was
simply this: Subdivision 4 had placed no limitation upon the
right of the surviving spouse to take all of the estate merely
because there might have been living children of a deceased
brother or sister, but, to the contrary, had said that unless
there were living brothers or sisters, the whole estate should
go to the widow. Turning, then, to subdivision 2, which con-
templates that in the event that there is a living brother or
sister and children of a deceased brother or sister, the chil-
dren of such deceased brother or sister shall take the parent's
share, the construction was inevitable that such children of a
deceased brother or sister could take only upon contingency,
and that contingency was the existence of a living brother or
sister. This construction, we have said, was forced upon this
court. We mean forced in the sense that it was an inevi-
table and unescapable conclusion. The unreasonableness of
it—even the injustice of it—was apparent and was recog-
nized. No sound reason could be or ever was attempted to
be adduced to support a law which said, as then did ours, that
children of a deceased brother or sister could share in the es-
tate if there was another living brother or sister, but could
not share if there were none. All that this court could say
was: *Ita scripta lex.* In time the anomaly of the situation
came to be recognized by the legislature and it amended sub-
division 4 in a most important particular. It also amended
subdivision 2, that it might read harmoniously with the
amended subdivision 4. That amendment for the first time
added to the classes, the existence of which would forbid the

surviving spouse from taking all of the estate "the children
or grandchildren of a deceased brother or sister." Or, to
make our meaning plain, paraphrasing the language of sub-
division 4, while still maintaining its meaning, originally it
declared that all of the estate shall go to the surviving spouse
unless the deceased spouse left issue, husband, wife, father,
mother, brother, or sister, in which event the estate should go
as provided in the previous subdivisions 1 and 2; or, again
paraphrasing its meaning, the subdivision declared that the
surviving spouse should not take all of the estate if any of
these enumerated relations of the deceased spouse survive.
By the amendment to subdivision 4 it declared that the sur-
viving spouse should not take all of the estate if, as well as
those first enumerated, children or grandchildren of a de-
ceased brother or sister survived. As a limitation upon the
right of the wife to take all of the estate, these children and
grandchildren of a deceased brother or sister were placed in
the same list and category as a surviving parent or a sur-
viving brother or sister. We now have the law reading as it
never read before. We have the law declaring that the sur-
viving spouse shall not take all if the deceased spouse left a
surviving father, or mother, or, failing these, left a surviving
brother or sister, or, failing these, left children or grandchil-
dren of a deceased brother or sister. It still becomes neces-
sary to turn to subdivision 2 to learn what disposition the law
makes of the estate when any of the contingencies or limita-
tions contemplated by subdivision 4 upon the surviving
spouse's right to take all of the estate have arisen, and we do
this now with the fixed declaration of the law that the surviv-
ing spouse shall not take all of the estate if there be surviving
children or grandchildren of a deceased brother or sister of the
deceased spouse. When we turn to the consideration of sub-
division 2, with this new light and law before us, we now find
a law rationally and justly framed to enable children of a
deceased brother or sister to inherit, whether or not there be
a surviving brother or sister. If there be a surviving brother
or sister then the children of each deceased brother or sister
take collectively their parent's share "by right of representa-
tion." If there be no surviving brother or sister and there
be children of more than one deceased brother or sister, each
group of such children takes the parent's share by right of
representation. Such is the manifest meaning of the amended

law; such is the meaning that would have been given to this law from the first—saving that this court was unable to give it because of the original limitation in subdivision 4, so often referred to.

And, finally, let it be said, if the amendment to subdivision 4, aptly phrased to accomplish this thing, does not mean this it means nothing, and the legislature was but beating the air.

The precise question here under consideration has never been directly presented to this court under these amendments to section 1386 of the Civil Code. But upon the other hand there is no decision of the court given since those amendments which follows the views of the *Estate of Ingram*—the law of which case happily fell to the ground with the existence of the amendments. To the contrary, while the question was not directly presented in them, the opinions in such cases as *Estate of Claiborne,* 158 Cal. 646, [112 Pac. 278], could only have been written under the recognized concession of the litigants that the law had been changed as indicated—a concession which the court accepted. *Estate of Nigro,* 172 Cal. 474, [156 Pac. 1019], contains nothing in opposition to what has been here said. In the *Estate of Nigro* this court simply laid down the unimpeachable proposition that children and grandchildren of a deceased brother or sister were not grouped in the law as forming together one class but as forming two distinct classes, so that grandchildren were entitled to the inheritance only in the event that there were no living children.

The motions to dismiss are therefore denied.

Sloss, J., Shaw, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.

LORIGAN, J., Dissenting.—I dissent.

As subdivisions 2 and 4 of section 1386 of the Civil Code now stand they provide—subdivision 2—that "If the decedent leaves no issue, the estate goes one-half to the surviving husband or wife, and the other half to the decedent's father and mother in equal shares, and if either is dead the whole of said half goes to the other. If there is no father or mother, then one-half goes in equal shares to the brothers and sisters of decedent *and to the children or grandchildren of any deceased brother or sister by right of representation.*" I have italicized that portion of the section more particularly in-

volved in the consideration of this matter. Subdivision 4 provides that "if the decedent leaves a surviving husband or wife, and neither issue, father, mother, brother, sister, nor the children or grandchildren of a deceased brother or sister, the whole estate goes to the surviving husband or wife." These are the only subdivisions of the section requiring attention. Appellants base their claim as heirs to a portion of the estate of decedent under subdivision 2 of the section.

When the Ingram case, referred to in the prevailing opinion, was decided in 1889, subdivision 2 of section 1386 read just as it does now except that in 1905—many years after it was decided—it was amended so as to add the words "or grandchildren" after the words "children." The other subdivision quoted above—subdivision 4—is the same now as it was when the Ingram case was decided except that it was then marked subdivision 5, and except, further, that it also was amended in 1905 to add "nor the children or grandchildren of a deceased brother or sister" after the word "sister." These amendments do not affect the situation here as far as grandchildren are concerned, because there are none.

Now, as to the Ingram case, 78 Cal. 586, [12 Am. St. Rep. 80, 21 Pac. 435]. It appears therefrom that Mrs. Ingram, deceased, left a surviving husband, but no issue and no surviving father, mother, brother or sister. There were, however, left by her certain children and grandchildren of a deceased sister, who, on distribution of the estate, claimed that they were entitled to one-half of it. The trial court having ignored their claim entirely, and having distributed all the estate to the assignee of the surviving husband, the said children and grandchildren of the said deceased sister appealed. They asserted, as do the appellants here, that they were entitled to one-half of the estate under said subdivision 2 of section 1386. This court, however, held to the contrary, and in construing both subdivisions 2 and 5 (now 4 as amended) said: "It is entirely beyond doubt that the whole of the estate should have been distributed to the surviving husband. Paragraph 4 of section 1386 of the Civil Code is too clear to present any difficulty of construction whatever. It is as follows: 'If the decedent leaves a surviving husband or wife, and neither issue, father, mother, brother, nor sister, the whole estate goes to the surviving husband or wife.' Paragraph 2 of said section refers to the case where *there is* a surviving

CLXXIV Cal.—44

brother or sister, and provides that in such case, if there be *also* children of the deceased brother or sister, they shall take their parents' share by right of representation. It is vain to argue against the injustice of the rule, or to contend that in a case like the one at bar the children of a deceased sister *ought* to have a share in the estate when there is not any surviving brother or sister, as well as when there *is*. Succession to estates is purely a matter of statutory regulation, which cannot be changed by courts.''

While this was a department decision, the construction put on these subdivisions was subsequently affirmed in Bank in *Estate of Carmody,* 88 Cal. 616, [26 Pac. 373], and *Estate of Nigro,* 149 Cal. 702, [87 Pac. 384], in which latter case it was declared, while not questioning the construction of the subdivisions as made in the Ingram case, that such interpretation of the law had theretofore become a rule of property which should be and is adhered to. These two decisions were made under the subdivisions as they stood prior to the said amendments of 1905, and they are confirmatory of the construction in the Ingram case of the subdivisions as they then stood and such construction should be adhered to not only as a proper one, but as having become a long-established rule of property, unless the amendment of 1905 to subdivision 4 compels a different construction. The prevailing opinion decides that it does. I am unable to agree with it. Certainly, the amendment of 1905 of subdivision 2 itself worked no change in the construction as given in the Ingram case. That amendment amounted only to the insertion of the word ''grandchildren'' therein which obviously operated solely as an enlargement of the class who might take if the class of ''children or grandchildren'' could take at all. No one claims that this subdivision alone, as amended, called for any different construction than it received in the Ingram case. And appellants do not. So it must be taken that as far as subdivision 2 is concerned it means, taken by itself, just what it has always meant and as the Ingram case declared it meant, namely, that the issue of a brother or sister of a deceased spouse could not inherit unless there were also a brother or sister left surviving the decedent. It is claimed, however, that a change in subdivision 2 was wrought through the amendment of subdivision 4 in 1905. If this is not so then it has not been wrought at all. If the amendment did have this effect where is the language

in it which declares it? The insertion in subdivision 4 of the words "nor the children or grandchildren" is not language potent or positive of itself to give them the right to inherit at all. These words were simply inserted in subdivision 4 to have it conform to subdivision 2 and make it consistent and harmonious with it. What the amendment to both these subdivisions amounted to is as to subdivision 2—that grandchildren and children of a deceased sister or brother may with a surviving brother or sister of a decedent inherit one-half the estate of a decedent with the surviving spouse, but only where there is a surviving brother or sister of the decedent who is entitled to do so. As to subdivision 4—that the surviving spouse shall inherit the whole estate when the decedent leaves "neither . . . brother, sister, nor the children or grandchildren of a deceased brother or sister." In other words, when the decedent spouse leaves none of those who, as enumerated therein would be entitled to inherit one-half of it under subdivision 2, then the whole estate goes to the surviving spouse, It will be observed also that the only subdivision which gives brothers or sisters, children or grandchildren of a deceased brother or sister, in plain and direct language any right to inherit with a surviving spouse at all is this subdivision 2. Subdivision 4 does not pretend to confer any right of inheritance on any one save the surviving spouse, and then gives the whole estate to such survivor when none of the parties exist who under subdivision 2 re-enumerated in subdivision 4, would be entitled to take. It is necessarily understood when subdivision 4 declares that on the nonexistence of any of the different classes enumerated therein, the surviving spouse takes the whole estate, that what is meant is that none of the classes exist who, if left, would be capable of inheriting under subdivision 2. (*Anderson* v. *Potter,* 5 Cal. 63.) If the legislature did not agree with the interpretation in the Ingram case it took it many years—some seventeen—to enact something different, with the result that instead of a clear and positive enactment as to inheritable rights, if that was the intended subject, we are still left to indulge in more construction and interpretation as to what was meant. Certainly, if it was intended to change the Ingram rule and establish a different rule of succession, it was not difficult for the legislature to do so, and do it in plain certain language in the proper place. If children and grandchildren were to inherit

one-half with the surviving spouse though no brothers or sisters survived the decedent, it could have easily and clearly said so in subdivision 2, where the inheritable rights of said persons are declared, and not left it to be construed through the use of negative, indirect, and obscure language inserted in subdivision 4 and which does not refer to succession or inheritance at all, and particularly where the only inheriting language used in said section is that conferring a positive inheritable right on the surviving spouse. I am satisfied that the enumeration in subdivision 4, of any of those who might not be entitled to take with the surviving spouse the one-half of the estate under subdivision 2, was made simply as a reason for granting or vesting the whole estate in such surviving spouse, and as not affecting the change in the rules of succession declared in subdivision 2 and as construed in the Ingram case.

The *Estate of Claiborne*, 158 Cal. 646, [112 Pac. 278], is not to be taken as authority questioning the rule of the Ingram case. That case is not mentioned or discussed there nor was the construction of subdivisions 2 and 4, or either of them, involved in that appeal. It could not be, as the question there was not one of succession on intestacy, but the construction of peculiar terms in a will. As far as the *Estate of Nigro*, 172 Cal. 474, [156 Pac. 1019], is concerned, while it did not involve the same question as here—the construction of subdivisions 2 and 4—it did involve the construction of subdivisions 2 and 3. In that construction the reasoning in the Ingram case was applied and approved, and I do not perceive that the two cases present any radical difference between them in the language used as to inheritable rights.

I think the trial court was correct in holding that the appellants had no interest in the estate which entitled them to appear therein or to be heard on appeal to this court, and that the motions to dismiss their appeals should be granted.