[S. F. No. 9573. In Bank.—December 2, 1921.]

In the Matter of the Estate of CATHERINE ROSS, Deceased. KATHERINE H. NICHOLSON et al., Appellants; JAMES R. CARRICK, as Administrator, etc., et al., Respondents.

[1] ESTATES OF DECEASED PERSONS — SUCCESSION — CHILDREN OF DECEASED SISTER—CONSTRUCTION OF CODE.—The separate property of a widow dying intestate who leaves neither issue, father, mother, brother, nor sister descends to the children of a deceased sister as next of kin under subdivision 5 of section 1386 of the Civil Code, to the exclusion of grandchildren of another deceased sister, since subdivision 3 of such section giving right of representation only applies where the deceased leaves a surviving brother or sister.

[2] ID.—COMMUNITY PROPERTY—VESTING OF INTERESTS OF DECEASED SPOUSES.—Where a widow dies intestate leaving property which was the community property of herself and her predeceased husband, the interests of the heirs of the deceased spouses vest independently of each other under subdivision 8 of section 1386 of the Civil Code, and the heirs of the predeceased husband are entitled to the one-half without regard to whether the other half vests in a father, mother, brothers, or sisters of the widow.

[3] ID.—CHILDREN OF DECEASED BROTHERS AND SISTERS—RIGHT OF SUCCESSION TO COMMUNITY PROPERTY—CONSTRUCTION OF CODE.— Under subdivision 8 of section 1386 of the Civil Code, there need be no brother or sister surviving in order that the descendants of deceased brothers and sisters may inherit the one-half of the community property of a deceased spouse, who left neither issue nor parents.

[4] ID.—PETITION FOR PARTIAL DISTRIBUTION — OUTSTANDING UN-ALLOWED CLAIM — SUFFICIENCY OF PETITION.—A petition for partial distribution presented in accordance with the terms of section 1663 of the Code of Civil Procedure, added in 1917, is not insufficient, because it shows an outstanding claim not allowed, where it appears that sufficient property has been set aside to cover it, since it is not a requisite that all claims shall have been allowed or disallowed, but only that the court satisfy itself that no injury can result from distribution.

[5] ID.—DETERMINATION OF HEIRSHIP — COMPLIANCE WITH SECTION 1664, CODE OF CIVIL PROCEDURE.—A petition for partial distribution under section 1663 of the Code of Civil Procedure is not insufficient because of failure to comply with section 1664, relative to the determination of heirship.

[6] ID.—PAYMENT OF INHERITANCE TAXES—SUFFICIENCY OF ORDER.—
An order for partial distribution directing that out of the dis-
tributed properties there shall be deducted and paid the in-
heritance taxes due from each of the distributees, sufficiently
satisfies the requirements of section 1669 of the Code of Civil
Procedure.

[7] ID.—EVIDENCE—PEDIGREE—CONSTRUCTION OF CODE.—The provisions
of sections 1852 and subdivision 4 of section 1870 of the Code of
Civil Procedure do not prescribe the sole method by which pedi-
gree must be proved, and do not exclude testimony on that sub-
ject by one having primary knowledge of the facts and who is
competent to testify.

[8] ID.—FINDINGS—HEIRSHIP.—In a proceeding for partial distribu-
tion, a general finding that all the allegations of the petition are
true is controlled by a special finding that certain named persons
are the heirs.

APPEAL from an order of the Superior Court of the City
and County of San Francisco granting a petition for par-
tial distribution. Thomas F. Graham, Judge. Modified and
affirmed.

The facts are stated in the opinion of the court.

George D. Collins, Jr., for Appellants.

T. G. Crothers, Wm. M. Abbott, Wm. M. Cannon, Kings-
ley Cannon and I. M. Golden for Respondents.

LAWLOR, J.—This is an appeal by certain relatives of
Catherine Ross, deceased, from an order granting a petition
by the administrator for a partial distribution of the estate
of the said Catherine Ross.

Catherine Ross died intestate March 22, 1916, leaving an
estate amounting to upward of fifty thousand dollars. At
her death she left neither issue nor surviving father, mother,
brother, or sister. She did leave surviving her six nephews
and nieces, the children of a deceased sister, Elizabeth H.
Donohue, and thirteen grandnephews, grandnieces, great-
grandnephews, and great-grandnieces, descendants of an-
other deceased sister, Bridget H. Quinn. At the time of
her death there were living also two sisters of John Ross,
her predeceased husband, and certain descendants of a de-

ceased brother and three deceased sisters of the said John Ross.

The estate of Catherine Ross consisted partly of her separate property and partly of property alleged to have been community property of herself and her deceased husband. The community property came to her through a decree of distribution of the estate of John Ross. James R. Carrick, the petitioner and one of the respondents herein, and a relative of John Ross, and Katherine H. Nicholson, one of the appellants and a relative of Catherine Ross, were appointed and qualified as administrator and administratrix, respectively, of the estate of Catherine Ross.

The petition for partial distribution was filed October 23, 1919, by James R. Carrick, as administrator of the estate. It alleged that notice to creditors had been duly given; that the time within which claims against the estate might be presented had passed; that all claims which had been presented had been paid save one for $2,442.40, which had been rejected and for the establishment of which an action was at that time being prosecuted; that an inventory of the estate had been filed, and that the estate was not in a condition to be finally distributed. Then followed a recital of the items of the estate and a list of the surviving relatives of John and Catherine Ross. It further stated: "That it has not been determined what inheritance tax is due to the state of California out of said estate and a determination of that matter cannot be made until this court determines what part of the properties of said estate was the separate properties of said Catherine Ross, deceased, and what part of said properties was the community property of said deceased and her predeceased spouse, John Ross." Petitioner's prayer was that the court ascertain and determine the rights of all persons interested in or claiming a portion of the estate, and the proportion to which each was entitled, and that petitioner have such other relief as might be proper. A demurrer was interposed on behalf of Katherine H. Nicholson on the ground that the petition did not state facts sufficient to entitle James R. Carrick to a partial distribution of the estate, which was overruled. Thereupon she filed an answer to the petition, wherein she alleged that all the property was the separate property of Catherine Ross; that Catherine

Ross died testate, and that certain named persons were her only beneficiaries; that the only heirs of Catherine Ross were certain named persons who were the descendants of her two predeceased sisters. The answer further denied all the allegations of the petition.

The court found that all the allegations of the petition were true and those of the answer were untrue; that certain designated property in the estate came to Catherine Ross by decree of distribution from the estate of John Ross, which property was community property; that certain other designated property was her separate property, and that certain named persons were the relatives of John Ross and Catherine Ross. As conclusions of law the court found: "That all of the community property of said deceased . . . was succeeded to at the death of said Catherine Ross, deceased, and should be distributed, on final or partial distribution, in the following manner: One-half (½) thereof to the said sisters of the said John Ross, deceased, and to the said descendants of the said deceased brother and sisters of said John Ross, deceased, by right of representation, their heirs, administrators or assigns, and one-half (½) thereof to the said next of kin of said Catherine Ross, deceased, to wit: to the said children of said Elizabeth H. Donohue, deceased, their heirs, administrators or assigns." The conclusion of law was to the effect that the separate property should be distributed to the heirs of Catherine Ross, namely, to the children of Elizabeth H. Donohue.

A portion of the estate amounting to twenty-eight thousand dollars was ordered distributed in accordance with the findings of the court. From this order one grandnephew and four grandnieces of Catherine Ross take this appeal. They are grandchildren of Bridget H. Quinn, one of the deceased sisters of Catherine Ross, whose descendants by the terms of the order of distribution are not entitled to share in the estate.

[1] 1. In considering the distribution of the estate we shall first dispose of the question of the separate property. In this connection respondents assert that "these nieces and nephews are 'the next of kin' of Catherine Ross, and the facts of this case bring it precisely within the provisions of subdivision 5 of section 1386 [of the Civil Code], which provides that: 'If the decedent leaves neither issue,

husband, wife, father, mother, brother, nor sister, the estate must go to *the next of kin in equal degree'"*; that "It is well established that, under the circumstances of this case, subdivision 3 has no application because no brother or sister of deceased survived her." Subdivision 3 of section 1386 is as follows: "If there is neither issue, husband, wife, father nor mother then in equal shares to the brothers and sisters of decedent and to the children or grandchildren of any deceased brother or sister, by right of representation." Respondents further state: "If there be no brother or sister of deceased living at the time of death, then the succession is not governed by subdivision 3, but is controlled by subdivision 5, which specifically provides for that precise case."

Appellants contend that "subdivisions 2, 3, and 4, so far as they relate to inheritance by children and grandchildren of a deceased brother or sister, were all adopted at the same time and as amendments to the pre-existing statute, for the sole purpose of overturning the doctrine of the *Estate of Ingram,* 78 Cal. 586, [12 Am. St. Rep. 80, 21 Pac. 435], on which doctrine rests entirely the ruling in the *Estate of Ellen Nigro,* 172 Cal. 474, [156 Pac. 1019], relied upon by respondents to sustain the decree we have appealed from. . . . Of course if the deceased never had a brother or sister there could be no child or grandchild of a deceased brother or sister. . . . Subdivision 5 makes no provision whatever for vesting the inheritance in a brother or sister of the decedent and hence the absence therein of any reference to the children or grandchildren of a deceased brother or sister. The entire subject of inheritance by the brothers and sisters and by the children or grandchildren of a deceased brother or sister is manifestly left by subdivision 5 to subdivisions 2 and 3 of section 1386." Appellants further assert: "By statutory enactment in 1905, and reaffirmed in 1907, the legislature amended sections 2, 3 and 4 of section 1386 of the Civil Code by granting the right of inheritance to children and grandchildren of a deceased brother or sister, in equal shares and by right of representation, irrespective of whether the decedent left surviving a brother or sister. The purpose of this statutory amendment was to abolish the interpretation of the law as given by the supreme court in *Estate of Ingram,* 78 Cal. 586, [12 Am.

St. Rep. 80, 21 Pac. 435]. This fact is pointed out by the court in *Estate of Jepson,* 174 Cal. 684, [164 Pac. 1].'' Respondents further claim that ''The *Estate of Jepson* is a clear holding to the effect that where particular conditions or facts are provided for by a particular subdivision or clause, that particular subdivision or clause must govern. The particular facts existing in the case at bar are specifically provided for by subdivision 5. The *Estate of Jepson* is clearly inapplicable and the Nigro case is undoubtedly apposite and controlling.''

The position of appellants is untenable. *Estate of Jepson, supra,* relied on by them, was decided on the authority of subdivision 2, there having been in that case a spouse and several children of predeceased brothers and sisters who survived the decedent. That case held that the amendments to subdivision 2, adopted in 1905, altered the meaning of that subdivision, and overruled *Estate of Ingram,* 78 Cal. 586, [12 Am. St. Rep. 80, 21 Pac. 435] ; *Estate of Carmody,* 88 Cal. 616, [26 Pac. 373], and *Estate of Nigro,* 149 Cal. 702, [87 Pac. 384]. These cases had held that, under subdivision 2, the children of deceased brothers and sisters could not inherit from the decedent unless the latter left surviving a brother or sister. *Estate of Jepson, supra,* held that under subdivision 2, as it was amended, the survival of a brother or sister was not necessary in order that children of a deceased brother or sister should inherit.

In *Estate of (Ellen) Nigro, supra,* the decedent left neither husband, father, mother, brother, nor sister. The only relatives claiming as heirs were the children and grandchildren of a deceased brother and two deceased sisters. It was claimed the case fell within the provisions of subdivision 3 of section 1386. The court said: ''The rights of the parties here are governed by subdivision 5 of said section. That subdivision is as follows: '5. If the decedent leaves neither issue, husband, wife, father, mother, brother, nor sister, the estate must go to the next of kin, in equal degree, excepting that, when there are two or more collateral kindred, in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote.'

"This subdivision applies, as its language shows, to cases where the decedent leaves neither issue, husband, wife, father, mother, brother, nor sister surviving. This is the condition here presented. . . . Under its terms, therefore, the only persons in equal degree of kindred to Ellen Nigro who could inherit from her, were the surviving children of the deceased brother and sisters. The grandchildren of such deceased brother and sisters were not in equal degree with such surviving children." This case was not overruled by *Estate of Jepson, supra,* as appellants claim, for there was no contention in *Estate of Jepson, supra,* that the facts were the same as in *Estate of Ellen Nigro, supra,* and in *Estate of Jepson, supra,* it was declared: "*Estate of Nigro,* 172 Cal. 474, [156 Pac. 1019], contains nothing in opposition to what has been here said. In the *Estate of Nigro* this court simply laid down the unimpeachable proposition that children and grandchildren of a deceased brother or sister were not grouped in the law as forming together one class but as forming two distinct classes, so that grandchildren were entitled to the inheritance only in the event that there were no living children." In the case at bar, as pointed out, the deceased left neither husband, father, mother, brother, nor sister, and did leave children and grandchildren of deceased sisters. It is, therefore, similar to *Estate of Ellen Nigro, supra,* and is such a case as is contemplated by subdivision 5.

Appellants also claim that even if the case at bar does fall within the provisions of subdivision 5, still the amendments to subdivisions 2 and 4 should be read into subdivision 5, and the children and grandchildren of the deceased sisters be allowed to inherit the property. That this is not the case is shown by the statement in *Estate of Ellen Nigro, supra,* that "these amendments obviously have no bearing whatever on the rule of interpretation here involved. They do not change the effect of the section [1386] as applied to the facts of this case."

There is no question but that the distributees of the separate property named in the order of distribution are the next of kin of Catherine Ross, they being the children of a deceased sister. As such they are entitled to the property by virtue of subdivision 5 of section 1386. It follows that

the order of distribution of the separate property conformed to the statutory provision.

2. Touching the distribution of the community property, appellants make the contention that "subdivision 8 of section 1386 of the Civil Code has no application, for in the first place that provision is a constituent part of the statute of succession, and is, of course, confined to estate not disposed of by will; and as all the property of the community estate that Mrs. Ross, the decedent, received, other than as surviving wife and pursuant to section 1402 of the Civil Code, came to her under the will of her predeceased husband, it is not within the statute of succession, to wit: section 1386 of the Civil Code." Respondents, on the other hand, maintain that "It is utterly immaterial whether one-half of the community property vested in Catherine Ross by operation of law or under the terms of the decree in the husband's estate. Under the express language of section 1386 of the Civil Code, subdivision 8, the test is: 'What is common property of such decedent and his or her deceased spouse while such spouse was living?'" In *Estate of Davidson*, 21 Cal. App. 118, 122, [131 Pac. 67, 69], it was said: "Subdivision 8 of section 1386 of the Civil Code controls the succession to property left by the widow, dying intestate, which was community property of herself and her husband at the time of his death, though he devised all or any part thereof to her by will." All the community property in the case at bar is, therefore, to be distributed in accordance with the provisions of subdivision 8 of section 1386. That section reads: "If the deceased is a widow, or widower, and leaves no issue, and the estate, or any portion thereof, was common property of such decedent, and his or her deceased spouse, while such spouse was living, such property goes in equal shares to the children of such deceased spouse and to the descendants of such children by right of representation, and if none, then one-half of such common property goes to the father and mother of such decedent in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such decedent and to the descendants of any deceased brother or sister by right of representation, and the other half goes to the father and mother of such deceased spouse in equal shares, or to the survivor of them if either be dead, or if both be dead, then in equal shares to the brothers and sisters of such deceased

spouse and to the descendants of any deceased brother or sister by right of representation. . . . "

[2] Appellants argue that subdivision 8 of section 1386 makes the vesting of any interest in the heirs of John Ross dependent on the vesting of a one-half interest in a surviving father or mother or, if none, in a surviving brother or sister of Mrs. Ross, the decedent. In support of this position is cited *Estate of Ingram, supra,* but that case is not in point, for the property there was separate property and the order of descent was regulated by subdivision 2. Besides, in *Estate of Jepson, supra,* upon which appellants rely, *Estate of Ingram,* as has been shown, was declared to have been overruled by the amendment of 1905. In *Estate of Brady,* 171 Cal. 1, [151 Pac. 275], the wife had died before the husband, leaving brothers and sisters and descendants of deceased brothers and sisters. The husband died later, leaving no kin. One-half of the community property was declared escheated to the state. The state appealed from the decree of distribution, contending that the whole estate should have escheated. While the principal question to be decided in that case was whether the estate was community property, it was held that the relatives of the predeceased wife were entitled to inherit one-half of the community property, although the deceased husband left no kin to inherit his half.

In *Estate of Hill,* 179 Cal. 683, [178 Pac. 710], the husband, Stephen Hill, predeceased his wife, Isabella Hill, and left surviving him a sister, two brothers, and the descendants of a deceased sister and two deceased brothers. Isabella Hill, upon her death, left only descendants of deceased brothers and sisters. Although the principal question in that case was the constitutionality of subdivision 8 of section 1386, the court affirmed a decree distributing one-half of the property among the relatives of the wife and one-half among those of the husband, although the wife, at her death, left neither father, mother, brothers, nor sisters. (See, also, *Estate of Wenks,* 171 Cal. 607, [154 Pac. 24].) It appears from these cases that the interests of the heirs of the two deceased spouses vest independently of each other and that the heirs of John Ross are entitled to the one-half without regard to whether the other half vests in a father, mother, brothers, or sisters of Catherine Ross. The heirs of John Ross were, therefore, properly included in the

order of distribution as entitled to one-half of the community property.

[3] Appellants insist they are entitled to share that portion of the community property which was distributed to the heirs of Catherine Ross. Respondents assert: "It will be noted that the language just quoted [subdivision 8] is similar to the language of subdivision 3 of section 1386, which was construed in the *Estate of Ellen Nigro*, 172 Cal. 474, [156 Pac. 1019], wherein it was directly held that, under the said language of section 3, neither the children nor the grandchildren of a deceased brother or sister are entitled to inherit, unless a brother or sister of the deceased be living." Appellants state that "There is no merit in the point urged by respondents that as Mrs. Ross left no surviving brother or sister, appellants as grandchildren have no right to inherit. This is an attempt on the part of respondents to apply to subdivision 8 the doctrine of the cases of Ingram and Nigro, whereas it has been explicitly held by the supreme court that the doctrine never had any relevancy to a case coming within subdivision eight."

*Estate of McCauley*, 138 Cal. 546, [71 Pac. 458], was a case involving the distribution of community property left by a surviving wife. Upon the death of the wife, two nieces of the predeceased husband claimed one-half of the community property left by the wife by virtue of subdivision 9, now subdivision 8, of section 1386. The court said: "Respondents say that these nieces do not inherit under subdivision 9 of section 1386 of the Civil Code, because no brothers or sisters of the deceased spouse of McCauley were living at the time of Mrs. McCauley's death. This view of the statute is based on an alleged application of the rule laid down *In re Ingram*, 78 Cal. 586, [12 Am. St. Rep. 80, 21 Pac. 435], and *In re Carmody*, 88 Cal. 616, [26 Pac. 373], construing subdivisions 2 and 5 of section 1386. These cases throw no light on subdivision 9. This subdivision plainly provides that in a certain contingency the community property must go to 'the brothers and sisters of such deceased spouse, in equal shares, and to the lawful issue of any deceased brother or sister, by right of representation.' " For the purposes of the case at bar subdivision 8 of section 1386 is worded the same as subdivision 9 was at the time *Estate of McCauley, supra*, was decided. Subdivision 8 pro-

vides that the property descends to "the descendants of any deceased brother or sister," whereas at the time of the decision in *Estate of McCauley, supra,* subdivision 9 provided that the property should go to "the lawful issue of any deceased brother or sister." It follows that under this subdivision there need be no brother or sister surviving in order that the descendants of deceased brothers and sisters may inherit under subdivision 8. Therefore, the descendants of both Elizabeth Donohue and Bridget H. Quinn are entitled to inherit one-half of the community property by right of representation.

Finally, respondents argue that subdivision 5 is to govern the descent of the community property as well as that of the separate property. They claim that "subdivision 8 is a limitation upon the operation of the previous subdivisions of section 1386. It governs the succession of that particular part of the estate of the decedent which was the community property of himself and the predeceased spouse and controls in so far, and only in so far, as it expressly goes. In other words, it governs the succession only to the extent that its provisions specify. Putting it otherwise, it may be said that we must look to the other provisions of the statute of succession for those instances which subdivision 8 does not cover or for which it does not provide." However, inasmuch as subdivision 8 does control this case, as already appears, subdivision 5 is inapplicable. Furthermore, even if subdivision 8 did not provide a mode of descent for the case at bar, subdivision 9, which provides for escheat in cases of community property not covered by subdivision 8, would apply.

[4] 3. Appellants' next contention is that the court erred in overruling the demurrer to the petition, on the grounds that under sections 1658, 1660, and 1661 of the Code of Civil Procedure an administrator cannot petition for partial distribution of an estate, and that the petition does not comply with section 1664 of the Code of Civil Procedure relative to the determination of heirship. They assert that the outstanding claim for $2,442.40 prevents the case from falling under section 1663 of the Code of Civil Procedure relative to the filing of a petition for partial distribution by an administrator, for the reason that it cannot be said whether the claim is an allowed claim or not until the litigation concerning it is determined. Appellants also insist that "The petition is

also fatally defective in that it affirmatively shows that the inheritance tax has not been paid. The statute expressly provides that 'before any decree of distribution of an estate is made' the court must be satisfied by the oath of the executor or administrator or otherwise that all state, county, and municipal taxes legally levied upon property of the estate, and any inheritance tax which is due and payable, have been fully paid. (Code Civ. Proc., sec. 1669.)''

This petition was presented in accordance with the terms of section 1663 of the Code of Civil Procedure, added in 1917 [Stats. 1917, p. 575]. That section provides that ''Where the time for filing or presenting claims has expired, and all claims that have been allowed have been paid, or are secured by a mortgage upon real estate sufficient to pay them, and the estate is not in a condition to be finally closed and distributed, the executor or administrator, or coexecutor or coadministrator, may present his petition to the court for ratable payment of the legacies, or ratable distribution of the estate to all the heirs, legatees, devisees, or their assignees, grantees or successors in interest. . . . '' The petition in this case, the allegations of which were found to be true, clearly shows that a situation exists here which is within the contemplation of this statute. The fact that it has not been determined whether the claim for $2,442.40 is or is not to be allowed is immaterial, for the code section refers only to those claims that *have been* allowed. It is not provided that it shall be requisite to a partial distribution that all claims shall have been allowed or disallowed. All that is required is that the court satisfy itself that no injury can result to the estate by reason of the distribution. None could result by reason of this outstanding claim, for there has been sufficient property set aside to cover it. Inasmuch as the petition conforms to section 1663 of the Code of Civil Procedure, it is immaterial whether or not it conforms to sections 1658, 1660, or 1661, which provide for partial distribution on the application of an heir or legatee. [5] Neither is this a special proceeding to determine heirship, as provided by section 1664, and the petition not having been presented in accordance with that section, need not comply with it. In the *William Hill Co.* v. *Lawler,* 116 Cal. 359, [48 Pac. 323], it was said: ''The 'distribution' of an estate includes the determination of the persons who by law are entitled thereto, and also the

187 Cal.—30

'proportions or parts' to which each of these persons is entitled; and the 'parts' of the estate so distributed may be segregated or undivided portions of the estate.'' Although that case involved a final distribution, the same considerations apply to a distribution under section 1663, for before the court can make an order for ratable distribution, it is necessary to know who the parties entitled to the estate are. Therefore, in such a proceeding the court may determine who the heirs are and to what proportion of the estate each is entitled.

[6] Appellants make no objection to the nonpayment of any taxes except inheritance taxes. The petition states that it was impossible to pay all the inheritance taxes until it was determined who were the heirs. *Estate of Mahoney,* 133 Cal. 180, [85 Am. St. Rep. 155, 65 Pac. 389], involved the final distribution of an estate. The trial court ordered the estate distributed, and ordered that the administrator retain an amount equal to the inheritance tax claimed by the state. Although the precise point involved there was the validity of the inheritance tax, the case is applicable for the reason that the decree of distribution was affirmed, although the taxes were unpaid, the order for the payment being included in the decree of final distribution. In that case the court declared: ''There is no showing in the bill of exceptions that the taxes in question had been paid by anybody, and the last order of the court, made *nunc pro tunc,* shows that taxes to the amount of one dollar and ninety cents on each one hundred dollars are claimed to be due upon said estate, and it is ordered by the trial court that the administrator retain that amount in his possession. It will not be presumed, in the absence of a showing to that effect, that the taxes have been paid; and sections 3752 of the Political Code and 1669 of the Code of Civil Procedure make it the duty of the court to see that the taxes are paid. On the record before us we can see no error in the action of the court directing the administrator to retain the amount of the taxes claimed.'' Here the question involved concerns the claims of various heirs, but the inheritance tax cannot be paid until those claims are settled, as in *Estate of Mahoney, supra,* it could not be paid until the validity of the tax was determined. In view of that case we think the order of the court directing that ''out of the properties of said estate so distributed there shall be deducted and paid the inheritance taxes due to the state

of California from each of said distributees'' is sufficient
to satisfy the court that the taxes will be fully paid by the
time the order is executed.

[7]　4. Another assignment of error is as follows: ''The
superior court erred in its ruling admitting in evidence the
testimony of petitioner Carrick relative to pedigree. The
testimony was clearly incompetent and irrelevant, as Carrick
was not and never had been a member of the family of the
deceased John Ross, and gave no testimony concerning the
declaration of the decedent on the subject.'' In support of
this position are cited sections 1852 and 1870, subdivision 4,
of the Code of Civil Procedure, and several cases, among
them *Estate of James*, 124 Cal. 653, [57 Pac. 578, 1008],
and *Estate of Heaton*, 135 Cal. 385, [67 Pac. 321]. Section
1852 provides: ''The declaration, act or omission of a mem-
ber of a family who is a decedent or out of the jurisdiction,
is also admissible as evidence of common reputation, in cases
where, on questions of pedigree, such reputation is admis-
sible.'' Section 1870, subdivision 4, is to the effect that
evidence may be given upon a trial of ''The act or declara-
tion, verbal or written, of a deceased person in respect to
the relationship, birth, marriage or death of any person
related by blood or marriage to such deceased person,'' and
by subdivision 11 evidence may be received of ''common
reputation existing previous to the controversy, . . . in cases
of pedigree.'' Counsel for appellants seems to have fallen
into error in assuming that these provisions are exclusive.
They are but exceptions to the rule that hearsay evidence is
not admissible. They do not prescribe the sole method by
which pedigree must be proved, and do not exclude testimony
on that subject by one having primary knowledge of the
facts and who is competent to testify. In *Estate of James*,
*supra*, there was no question concerning the proof of pedi-
gree by direct testimony of a relative. The question was
whether the declarations, concededly hearsay, were of such
a character as to be entitled to admission under the exception
made in cases of family relationship. In *Estate of Heaton*,
*supra*, certain declarations and statements of common repu-
tation were held to have been improperly admitted for the
purpose of proving relationship, and the court cited the
rules given above, but nowhere was it intimated that these
declarations or evidence concerning reputation were the only
means of proving relationship. To so hold would, for in-

stance, prevent a parent from testifying as to the paternity or relationship of his or her own child. We conceive that any person having knowledge of the facts may testify concerning matters of pedigree, as on any other proper subject, his credibility and the weight of his testimony being determined in the trial court. Carrick's testimony was properly admitted.

[8] 5. A further assignment of error is that the findings are contradictory and in that respect do not sustain the decree. One of the findings is to the effect that all the allegations of the petition are true. Among these allegations so found to be true is one to the effect that "the names and residences of the heirs and distributees of said Catherine Ross, deceased, and persons entitled to distribution of said estate are as follows." In the list given appeared the names of all the relatives to whom we have referred, including those of appellants and the other descendants of Bridget H. Quinn. In the specific findings that certain named persons are the heirs, and in the conclusions of law, the appellants and the other descendants of Bridget H. Quinn are excluded. There is no error in these findings for the special finding that certain named persons are the heirs controls the general finding that all the allegations of the petition are true. It was said in *McCormick* v. *National Surety Co.*, 134 Cal. 510, [66 Pac. 741]: "A general finding of the court that certain averments of the complaint were true included the fact that the attached property belonged to both the defendants in the former action; but there was a special finding that it belonged to the defendant the said railroad company alone, subject to certain liens, and that the defendant Rikert had no interest therein. Appellant's contention that the special finding must prevail is correct, and this appeal must be determined upon that theory."

The judgment as to the separate property is affirmed, and as to the community property, it is modified to include the descendants of Bridget H. Quinn as well as those of Elizabeth Donohue.

Shaw, C. J., Sloane, J., Lennon, J., Wilbur, J., and Shurtleff, J., concurred.

Rehearing denied.

All the Justices concurred.