[L. A. No. 9173. In Bank.—June 24, 1929.]

THE PEOPLE, Respondent, v. H. W. HAWLEY et al., Appellants.

[L. A. No. 9174. In Bank.—June 24, 1929.]

LOS ANGELES ROCK & GRAVEL COMPANY (a Corporation), Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

[L. A. No. 9175. In Bank.—June 24, 1929.]

LOS ANGELES ROCK & GRAVEL COMPANY (a Corporation), Respondent, v. GEORGE E. CRYER et al., Appellants.

Jess E. Stephens and Erwin P. Werner, City Attorneys, and Jerrell Babb and Frederick von Schrader, Deputies City Attorney, for Appellants.

Charles H. Mattingly for Respondents.

CURTIS, J.—These three actions were tried at the same time and were submitted for decision to the trial court upon the same evidence. They are before us upon three separate appeals, but upon one and the same transcript of the evidence. It is conceded that the facts governing these three cases, as well as the legal questions involved, are closely related, and that all three appeals may properly be decided in one opinion.

The first of these actions (No. 9173) was instituted by the city attorney of the City of Los Angeles under section 731 of the Code of Civil Procedure in the name of the People of the State of California to abate an alleged public nuisance maintained by the defendants in said action. While there are other persons named in said actions as defendants the principal defendant in interest is the Los Angeles Rock & Gravel Company. The defendant H. W. Hawley has no

interest in said action, except as a stockholder in, and president of, said company. The other defendant is an employee or subcontractor of the company. The nuisance sought to be abated by this action was the result of certain operations and excavations then being carried on by the Los Angeles Rock & Gravel Company in the bed of the Arroyo Seco in the City of Los Angeles. The Arroyo Seco, as its name signifies, is a dry watercourse. It has a defined channel with steep banks, and while dry a large portion of the year, in the winter months, and particularly in periods of heavy rainfall, a large amount of flood and storm waters flows in its channel. These waters originate from an extensive watershed in the mountains north and east of the City of Los Angeles and are conducted through and in said watercourse in a southeasterly direction until they reach the Los Angeles River. The bed and banks of the Arroyo Seco are of loose earth, sand, rock and gravel, and by reason of the large amount of flood water at times flowing therein and the character of the materials comprising its bed and banks, said flood waters cause the said banks and bed thereof to be undermined and washed away whenever the natural conditions of the surface and contour of said bed and banks are destroyed by digging, excavating or otherwise removing the material thereof. The nature and character of the nuisance complained of in the complaint were, first: The smoke, noise and dust created by a steam shovel engaged in excavation of the lands of the Los Angeles Rock & Gravel Company, situated in the bed and along the banks of the Arroyo Seco; second, the nuisance resulting from stagnant pools of water which had gathered in certain excavations made by said company on its said lands, which pools of water when left standing bred· mosquitoes and were otherwise detrimental to the health of those residing ·in the near vicinity, and, third, the danger from flood waters resulting from the excavations already made by said company and those which said company planned to make in the future. In its decree the trial court ordered the stagnant water complained of drained off or otherwise disposed of and the holes or depressions wherein this water had gathered filled up and the surface thereof made level with the adjoining land, and made the future operations of the company dependent upon a compliance with said requirements, and the substitution

of an electric for a steam shovel, with the excavations to be kept sprinkled to avoid the smoke, dust and noise complained of. Said decree further provided: "That said defendants shall at all times make any and all excavations permissible hereunder in such manner as to provide a channel in the bed of the Arroyo Seco sufficient to carry a flow of 19,000 second-feet of water, and in such manner as to provide complete and adequate protection to property adjoining said channel from erosion thereof, and so as to afford subjacent and lateral support thereto." As to this part of the decree the defendants make no complaint. The court further found, however, finding XI: "That the defendants are the owners of all the land described in the complaint and amendments thereto and Plaintiff's Exhibit 1, and designated as the 'McNeil Lease.' That defendants are in possession of said 'McNeil Lease' and by the terms of said lease have the right to excavate all rock, sand and gravel upon it during the period of said lease, in accordance with the terms thereof, without restriction. That said lease expires on September 16th, 1925. That according to the terms of said lease all rock, sand and gravel remaining upon said leased land at the expiration of said lease on September 16th, 1925, will be the property of the lessor, and will be forever lost to and forfeited by said lessee, the defendants herein."

Finding XIV: "The property constituting the McNeil lease described in the complaint and Plaintiff's Exhibit 1, both inside and outside of the channel of the Arroyo, is composed of loose rock, sand and gravel of the same general nature and character as that of all of the land along the bed and banks of the Arroyo Seco. The court finds there is no objection to the excavation of that portion of the McNeil lease constituting the channel of the Arroyo Seco, provided such excavation in, along and adjacent to such channel is of sufficient width and depth to carry at least 19,000 second-feet of water. The court further finds that no regulation of the excavation of the McNeil lease outside of the Arroyo Seco channel by means of concrete walls or otherwise, can be made which will afford protection to property and streets adjoining the McNeil lease outside of the channel, equal to or superior to the protection now afforded by the loose rock, sand and gravel which defendants propose to excavate down

to the level of the channel of the Arroyo Seco, unless enjoined by the court.''

Predicating its judgment upon these findings the court further decreed that the defendants, their successors and assigns, be restrained and enjoined from making any excavations in the earth, rock, sand and gravel constituting the flat or table land known as the McNeil lease, which said land constitutes the easterly bank of the Arroyo Seco.

To this portion of the judgment the defendants make most vigorous protest, and from this portion, and this portion alone, have they appealed as appears from their notice of appeal herein.

The first point made by appellants in their appeal is that the court is without jurisdiction to render any injunction whatever absolutely enjoining and prohibiting defendants from excavating upon their said lands. They base this contention upon the fact that the action is instituted and prosecuted by the city attorney of the City of Los Angeles in the name of the People of the State of California solely under the authority conferred upon said official by section 731 of the Code of Civil Procedure, and that this section of the code confers no jurisdiction upon the court in which an action is brought under its authority to issue an injunction. In other words, appellants contend that the sole power given by the court in such an action is to abate a public nuisance, and that it confers no power upon the court to issue an injunction. It is true that this section of the code refers only to an action brought ''to abate a public nuisance,'' but it is often, and we might say generally, necessary in order to abate a nuisance to direct that those guilty of maintaining the same be enjoined from doing certain acts, which, if done, would amount to a continuance or maintenance of such nuisance. This precise question was decided adversely to appellants' contention in the case of *People* v. *Selby Smelting & Lead Co.,* 163 Cal. 84 [Ann. Cas. 1913E, 1267, 124 Pac. 692, 1135]. That action was brought by the district attorney of Solano County under a statute providing that ''The district attorney of any county of this state in which a public nuisance may now or hereafter shall exist may . . . bring a civil action in the name of the people of the state to abate said nuisance.'' (Stats. 1899, p. 103.) The language of said statute is to all intents and purposes the same as that found in sec-

tion 731 of the Code of Civil Procedure. It was held by this court in that action that the court had power to enjoin the defendants maintaining a smelter from permitting the injurious fumes emitted from its works to blow over and upon the premises affected thereby, even though the remedy of abatement is the only one specifically provided by the statute. In that case the court stated that "An abatement of a nuisance is accomplished in a court of equity by means of an injunction proper and suitable to the facts in each case," and held that "The judgment rendered was within the power conferred by the statute in reliance upon which the district attorney instituted the action." Appellants also assert as all the nuisances complained of, such as the smoke, noise and dust created by the use of the steam shovel and the stagnant pools of water left standing by reason of the excavations were abated by the decree and judgment and provision was further made therein that the channel of the Arroyo Seco be left open so as to carry the largest amount of water ever known to have flowed therein, that the court could not in addition to the abatement of these nuisances enjoin the defendants from excavating upon their lands, and particularly those within the McNeil lease. But among the nuisances complained of was that of danger from flood waters resulting from the excavations of appellants' land, and if such excavations upon proper and sufficient evidence were found by the court to result in exposing the private and public property in that vicinity to danger from flood waters, then such excavations would become a public nuisance and could be abated by said court, even to the extent of enjoining in said action all excavations upon appellants' said land. We are satisfied that the court in said action had the power to issue an injunction restraining the defendants from the commission of any act or acts which the evidence showed would contribute to or result in the maintenance or creation of the nuisance complained of.

Appellants next contend that the complaint does not state facts sufficient to constitute a cause of action, and therefore their general demurrer should have been sustained. There is absolutely no merit in this contention, and we think appellants have conceded that to be so by their acquiescence in that portion of the judgment which in response to the

allegations of the complaint decrees the abatement of the nuisances complained of.

Appellants contend that the findings are inconsistent with and do not support the judgment, and that the evidence is insufficient to support the findings, and particularly said finding XIV. We will consider these objections together, and in doing so a few further details as to the facts may be recited in the interest of a better understanding of appellants' position. The Los Angeles Rock & Gravel Company is the owner of a rock-crushing plant situated in the Arroyo Seco some distance, perhaps a mile or two, below the McNeil lease. The company is also the owner in fee of a number of irregular tracts of land amounting in all to approximately 130 acres in the bed and along the banks of the Arroyo Seco, which irregular pieces of land extend from said plant up to and beyond the McNeil lease. These lands do not include the McNeil lease. For some years prior to the commencement of this action the company had obtained sand, gravel and rock for the operation of its said plant from these lands located along and in the channel of said arroyo, and was so doing at the time of the commencement of this action. The complaint was aimed not particularly at the excavations which were then being made on the McNeil lease, but generally to all operations and excavations made by the company upon any of its holdings located in or along the channel of said arroyo and within the limits mentioned in the complaint. Upon the issues as made by the pleadings regarding the effect of these excavations the court found, finding VI: "That as their excavations progress defendants propose to give to the adjoining land and streets the lateral subjacent support, which said land and streets received from defendants' adjoining lands, and defendants propose to give to all adjoining lands and streets, protection against flood waters and lateral support equal if not superior to that afforded said adjoining lands, property and streets by any and all lands excavated or removed by defendants. That defendants propose to conduct the business and excavations in such a way as to create no menace to public health, peace, safety or morals." Finding VIII: "That the effect of the excavations defendants propose and intend to make in the operation of its said business will be to widen and deepen the channel of the Arroyo Seco. That all of the land described in the com-

plaint is composed of loose rock, sand and gravel. That defendants propose to at all times and places furnish to adjoining land and streets ample protection, equal to or superior to that afforded such adjoining land and streets by any land excavated by defendants along such adjoining land and streets.''

We think there is nothing necessarily inconsistent in the findings of the court taken as a whole. In the last two findings the court found that in the work and excavations which the appellants planned to make in their said land they proposed to give to adjoining property equal if not superior lateral support enjoyed by said lands in their natural state, while in finding XIV, above quoted, the court found explicitly that ''no regulation of the excavations of the McNeil lease outside of the Arroyo Seco channel by means of concrete walls or otherwise, can be made which will afford protection to property and streets adjoining the McNeil lease outside of the channel, equal to or superior to the protection now afforded by the loose rock, sand and gravel.'' Findings VI and VIII may be said to constitute general findings and refer to the lands generally in which the appellants are carrying on their excavation operations, while finding XIV refers explicitly to those excavations being made upon the McNeil lease. In such a case the special findings would control and there is no inconsistency. (*Estate of Ross,* 187 Cal. 454 [202 Pac. 641]; *McCormick* v. *National Surety Co.,* 134 Cal. 510 [66 Pac. 741].) We are thus brought to the consideration of finding XIV and to the evidence in the case in relation to its sufficiency to support said finding.

This appeal is before us on the so-called alternative method, the reporter's transcript consisting of over 3,000 typewritten pages. The appellants in a supplemental brief have set forth the testimony of a number of witnesses, both lay and expert, upon the question of the size of the channel required to carry the flood and storm waters of the Arroyo Seco, and of the character of the walls or embankments necessary to protect adjoining lands. They have also printed in their said brief the joint report of four engineers, two representing each side of this controversy, upon these questions. The respondent makes no reference practically to any evidence in its brief, nor has it printed either in its brief or any appendix thereto

any of the evidence taken during the trial. In the appeal taken in the other two cases the appellants therein have presented a supplement to their brief, in which they have printed the judgment-roll alone in said cases. No evidence, however, is printed in said supplement. The four engineers, who filed the joint report above referred to, acted, in preparing said report, at the suggestion of the trial court. The trial court had previously stated to the attorneys of the parties hereto that a much more satisfactory result might be obtained by the selection of two engineers by each of the parties to this action, who, after their selection, might confer among themselves and report to the court their joint conclusion upon the questions then before the court than to proceed in the usual manner by the production and examination and cross-examination of witnesses for the purpose of establishing the contentions of the respective parties hereto. Acting upon this suggestion of the court, each side of this controversy selected two engineers, whose qualifications were admitted. These four engineers thereafter filed a written report signed by all four of them as to the size and character of the channel necessary to carry the flood waters of said watercourse and the character and height of the walls necessary to protect said channel and adjoining lands. One of said engineers, W. C. Steele, who represented the respondent herein, while signing said report, reserved the right to submit a supplemental report which he afterward prepared and submitted and which the appellants have printed in their supplemental brief. The pertinent portions of said joint report are as follows:

"Engineer's joint conclusion as to channel to safely carry for all time all flood waters of the Arroyo Seco.

"1. The channel should have a safe capacity of 19,000 second-feet.

"2. The general cross section of such a channel would be, 150 feet wide and 12 feet deep, the lower 6½ feet of the channel being occupied by the water, and the upper 5½ feet 'freeboard.'

"3. The sides of the channel to be protected by proper walls. The depth of the foundations of the side walls to be such, from point to point, as safety shall prescribe having due regard to all local conditions and possible scour.

"4. The velocity in such channel would be such that the bottom would scour and require protective measures and maintenance."

Engineer Steele, while he signed·this joint report as we have seen, reserved the right to submit a supplemental report. In the supplemental report submitted by him he disagreed with the joint report on the ground that it was ''inadequate and therefore misleading.'' In this report he states that: ''Nothing but a concrete-lined channel, continuous from the Devil's Gate Dam (a dam constructed in the upper reaches of the Arroyo Seco) to the Los Angeles River, or a channel lined with concrete on the bottom and riprap on the sides, will satisfy the requirement of permanence. A channel with concrete side walls and gravel bottom will inevitably erode and scour below the footings of the protective side walls and thus renew the problem presented to the court for settlement.''

While the requirements specified by Engineer Steele are much more drastic than those proposed by the joint report, he nowhere in his report or elsewhere suggests that adequate provision cannot be made for confining the flood waters of said stream within its channel and thus affording permanent protection to adjoining lands and streets. There is no testimony of any witness to which our attention has been directed, or which is legally before this court for its consideration, which tends to establish the impossibility or impracticability of protecting adjoining lands and streets by means of concrete and steel walls from being injured or damaged by excavations made in lands within said channel. Neither is there any such evidence which tends to prove that such artificial support as may be given by walls of the character just described may not be equal to the protection afforded such lands and streets by the natural rock, sand and gravel in place prior to any excavation ·being made. All the evidence in the case goes to show that the bed and banks of the Arroyo Seco are composed of rock, sand and gravel of the same general character throughout the whole course of the channel as it runs through the lands in the possession of appellants. We have not been directed to any evidence, and we have been unable to find any ourselves, that indicates that the character of the land embraced within the McNeil lease is any different in character from the

lands owned by the appellants along the channel of said watercourse. We are at a loss to understand the reason which prompted the trial court in permitting excavations to be made on any and all of the lands owned by them, but denied it the right to make such excavations on the land held by it under the McNeil lease and lying east of the channel thereof. We are therefore of the opinion that the record before us is without any evidence to support the finding of the trial court ''that no regulation of the excavations of the McNeil lease outside of the Arroyo Seco channel by means of concrete walls or otherwise, can be made which will afford protection to property and streets adjoining the McNeil lease outside of the channel, equal to or superior to the protection now afforded by the loose rock, sand and gravel which defendants propose to excavate down to the level of the channel of the Arroyo Seco.''

Appellants make the further claim that the judgment is erroneous in that it fails to provide for the payments to the Los Angeles Rock & Gravel Company in the sum of $675,000. This contention is made upon the following theory: The court found that the gravel deposits upon the land designated as the McNeil lease contain approximately 900,000 cubic yards of rock, sand and gravel of the value of approximately seventy-five cents per cubic yard, or $675,000. The McNeil lease was dated September 16, 1920, and was for a term of five years from its date. It therefore would expire on September 16, 1925. The company acquired it July 21, 1923, and began to make excavations upon the land covered by said lease in December, 1923. There was evidence to the effect that if permitted to do so, the company could have taken all of the rock, sand and gravel out of the McNeil lease in less than one year. The temporary injunction in this action was issued in January, 1924, and was followed by a permanent injunction. In each of these injunctions the company was restrained from making any excavations of rock, sand or gravel upon the McNeil lease. Appellants therefore argue that as the company was enjoined and restrained from excavating the rock, sand and gravel upon the McNeil lease from January, 1924, to September 16, 1925, when the term for which the company held said lease expired, and as the deposits therein were of the value of $675,000, said company was entitled to judgment

for this sum against the City of Los Angeles. It is only necessary to say in answer to this argument that whatever damages, if any, the company has sustained by reason of the issuance of the temporary and permanent injunctions cannot be recovered in this action. Such questions must be determined, if at all, in an independent action brought for that purpose.

Neither are we in accord with the contention of the respondent that as the company's rights under the lease to the McNeil land have now terminated by lapse of time, this appeal should be dismissed. We are not prepared to say that a reversal of the judgment would prove fruitless and that therefore the controversy has become moot.

The pleadings, findings and evidence contain many references to the Los Angeles Flood Control District and the claim is made that as all the lands involved herein are situated within said district, that fact has a bearing upon the rights of the respective parties to this action. Such a claim is absolutely without any foundation in law or reason and the trial court should have struck out of the pleading all allegations therein referring to said district and should have excluded all evidence that the lands involved herein were within said district. We think this disposes of all the questions arising in the action of *People* v. *Hawley et al.,* referred to in the briefs of counsel as the nuisance case.

The other two actions involve the validity of certain provisions of two ordinances enacted by the City of Los Angeles and for the purpose of conveniently distinguishing them from the previous action they will, as occasion requires, be referred to as the ordinance cases. The first of these two cases (No. 9174) was instituted by the Los Angeles Rock & Gravel Company against the City of Los Angeles and certain of its officers to enjoin them from interfering with plaintiff in its excavation and removal of rock, sand and gravel from the lands belonging to said company and located in the channel and along the banks of the Arroyo Seco. The lands involved in this action are the same lands as those described in the nuisance case as belonging to or in the possession of the Los Angeles Rock & Gravel Company, including the lands covered by said McNeil lease. It was alleged in the complaint that the City of Los Angeles had enacted an ordinance numbered 32,769, and that it was by

reason of the provisions of this ordinance that the officers of the City of Los Angeles threatened to prosecute and arrest the officers, agents and employees of the Los Angeles Rock & Gravel Company unless the latter ceased to make the excavations complained of and which were then being carried on by said company in its said lands in the Arroyo Seco. The provisions of ordinance number 32,769, in so far as they are pertinent to this action, are that "It shall be unlawful for any person, firm, or corporation to dig, excavate, screen or dredge for sand, gravel, earth, rock, stone, minerals or any substance below the official grade of the abutting street upon any premises within the residence district as said district is described in the ordinance of the city of Los Angeles except only and so far as necessary for the erection, construction or alteration of a building thereon, and after first obtaining a building permit."

The second of these two actions (No. 9175) is substantially the same as action number 9174. It asks for the same relief against practically the same set of officials as is prayed for in action number 9174. The only difference in the two actions is found in the allegations as to ordinances under which said officers are alleged to have been acting when they threatened the company with arrest and prosecution unless it ceased its excavation operations in the Arroyo Seco. In the first of said two actions, as we have seen, it was alleged that the said officers were acting under ordinance number 32,769, which purported to prohibit all excavations for rock and other materials within any residence district of said city. In the second of said two actions it was alleged that the said officers were acting under the authority given them by the terms of ordinance number 33,761, and its various amendments. This was a so-called zoning ordinance, and by it there was established a residence district in said City of Los Angeles in which the lands hereinbefore referred to as belonging to and in the possession of the Los Angeles Rock & Gravel Company, including the lands within the McNeil lease, were included and made a part of said residence district. This last-mentioned ordinance further contained a provision prohibiting excavations for rock and other materials in any land within said residence district, substantially the same as that contained in ordinance number 32,769, and which we have quoted above. It will thus

be seen that the two actions are to all intents and purposes identical. The trial court held that each of said ordinances was void in so far as it purported to affect the said lands of which the Los Angeles Rock & Gravel Company was the owner and enjoined the said officers of the City of Los Angeles from enforcing, or seeking to enforce, said ordinances against the Los Angeles Rock & Gravel Company, and enjoined and prohibited the City of Los Angeles and its officers from interfering with said company, its agents, servants and employees in the operation of its excavations in the Arroyo Seco "upon its land described in the complaint . . . with the exception of that portion of its leased land, described therein as the 'McNeil lease' lying east of the channel of the Arroyo Seco." It will thus be seen that in the first of these three actions the Los Angeles Rock & Gravel Company was enjoined from making any excavations upon that part of the "McNeil lease" lying east of the channel of the Arroyo Seco, and that the officers of the City of Los Angeles were enjoined in the other two of said actions from interfering with the Los Angeles Rock & Gravel Company in making excavations upon any of its said lands except that part of the McNeil lease lying east of the channel of the Arroyo Seco.

From the judgment declaring the provisions of said ordinances invalid and restraining and enjoining the City of Los Angeles and its officers from interfering with the excavation operations of said company, the defendants in each of said actions have appealed. It is apparent from the foregoing that the one question presented by the appeal in these two ordinance cases is the validity of the provisions of these ordinances making it illegal to excavate for rock, sand, gravel or other materials upon the lands of the Los Angeles Rock & Gravel Company within the residence district of the City of Los Angeles. If these provisions of said ordinances are valid, then it was the duty of the city officials of the City of Los Angeles to enforce the same and no injunction would lie to restrain them from performing this duty. On the other hand, if said provisions of said ordinances are void, then the action of said city officials in attempting to enforce them against the Los Angeles Rock & Gravel Company was illegal and the judgment enjoining such action was valid and binding upon said officials.

By the ordinances of the City of Los Angeles above referred to the lands of the company located in the channel and along the banks of the Arroyo Seco are zoned as residence property, and excavations for rock, gravel, sand and other materials are prohibited to be made therein. The court found that these lands were chiefly valuable for the deposit of rock, sand and gravel contained therein and that these deposits were of the value of approximately $1,125,000. While it found that the territory in the vicinity of and contiguous to said Arroyo Seco throughout the greater portion thereof was built up with homes, dwellings and other buildings, it also found that the Santa Fe, Union Pacific and Pacific Electric Railways run in a northerly and southerly direction, being the same direction in which said Arroyo Seco runs, "in close proximity to the property of the company described in the complaint, with the usual noise, smoke and dust accompanying such operation." The court further found that the excavations being carried on by the company under the conditions imposed in the case of *People* v. *Hawley* would have the effect of widening and deepening the channel along the Arroyo Seco so as to permit the flood and storm water to flow freely through and down the same; that the company in carrying on its excavation development will provide adequate lateral support to adjoining lands, and that the company "proposes to conduct the business and excavations in such a way as to create no menace to public health, safety or morals." As conclusions of law the court found that said ordinances were "unreasonable, oppressive, unconstitutional and void" in their application to the plaintiff and its said property. We think that there can be no question but that these findings of fact justify said conclusions of law and that the judgments declaring said ordinances void in their application to the said lands of the Los Angeles Rock & Gravel Company are supported by said findings.

In this state the law governing the power of municipalities to enact reasonable zoning legislation has been definitely settled by the recent decisions of this court, notably the cases of *Miller* v. *Board of Public Works*, 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381], *Zahn* v. *Board of Public Works*, 195 Cal. 497 [234 Pac. 388], *In re White*, 195 Cal. 516 [234 Pac. 396], and *Pacific Palisades Assn.* v. *City of*

*Huntington Beach,* 196 Cal. 211 [40 A. L. R. 782, 237 Pac. 538]. These decisions with others of this and the several District Courts of Appeal establish without question that the right to zone may be resorted to by municipalities upon a proper invocation of the police power. "But such zoning must be reasonably necessary and reasonably related to the health, safety and morals or general welfare of the community." (*Pacific Palisades Assn.* v. *City of Huntington Beach, supra,* p. 216.) Further, the court in the opinion in that case says (p. 217): "Ordinances having that effect must be reasonable, and must be for the purpose of protecting the public health, comfort, safety, or welfare. Every intendment is to be made in favor of the lawful exercise of municipal power making such regulations, and it is not the province of courts, except in clear cases, to interfere with the exercise of that authority. But, as was recently said by the Supreme Court of the United States, 'while property may be regulated to a certain extent if regulation goes too far it will be recognized as a taking.' (*Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, 415 [28 A. L. R. 1321, 67 L. Ed. 322, 43 Sup. Ct. Rep. 158, see, also, Rose's U. S. Notes].) Therefore, notwithstanding this general grant of power, it is a thoroughly well-settled doctrine that municipal by-laws, and ordinances undertaking to regulate useful business enterprises are subject to investigation in the court, with a view to determining whether the law or ordinance is a lawful exercise of the police power; or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the right to carry on a lawful business, to make contracts, or to use and enjoy property. (*Dobbins* v. *Los Angeles,* 195 U. S. 223 [49 L. Ed. 169, 25 Sup. Ct. Rep. 18]; *In re Application of Throop,* 169 Cal. 93, 99 [145 Pac. 1029]; *Curtis* v. *City of Los Angeles,* 172 Cal. 230, 234 [156 Pac. 462].)" This same doctrine is enunciated in the case of *Dobbins* v. *Los Angeles, supra,* a case which arose in this state, in the following language (p. 238): "It may be admitted as being a correct statement of the law as held by the California Supreme Court that, notwithstanding the grant of the permit, and even after the erection of the works, the city might still, for the protection of the public health and safety, prohibit the further maintenance and continuance of such works, and the

prosecution of the business, originally harmless, may become, by reason of the manner of its prosecution or a changed condition of the community, a menace to the public health and safety. In other words, the right to exercise the police power is a continuing one, and a business lawful to-day may in the future, because of the changed situation, the growth of population or other causes, become a menace to the public health and welfare, and be required to yield to the public good. (*Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659 [24 L. Ed. 1036]; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 672 [29 L. Ed. 516, 6 Sup. Ct. Rep. 252].) But the exercise of the police power is subject to judicial review and property rights cannot be wrongfully destroyed by arbitrary enactment. It was averred that the works would be constructed so as not to interfere with the health or safety of the people. No reasonable explanation for the arbitrary exercise of power in the case is suggested.''

No authority is required to support the proposition that the business of excavating rock and gravel by the owner from lands belonging to him is a lawful and useful occupation, and cannot be prohibited by legislation except in cases where the enactment of such legislation may be found necessary for the protection of the legal rights of others. If authority were necessary we have but to refer to a decision of this court, *In re Kelso,* 147 Cal. 609 [109 Am. St. Rep. 178, 2 L. R. A. (N. S.) 796, 82 Pac. 241]. That case, we think, sheds some light upon the general aspect of the present action. An ordinance of the city and county of San Francisco was there under consideration wherein the attempt was made to prohibit the operation of any rock or stone quarry within certain prescribed limits of said municipality. This court, in declaring said ordinance unconstitutional and void, said (p. 612): ''Applying these well-recognized principles to the ordinance before us, we are unable to perceive any ground upon which it may be sustained as a legitimate exercise of the police power. It is in no sense a mere regulation as to the manner in which rock or stone may be removed from the land by the owner thereof, but is an absolute prohibition of any such removal. However valuable the rock or stone may be if removed, and however valueless if not removed, the owner must allow

it to remain in its place of deposit. Such a prohibition might be justified, if the removal could not be effected without improperly invading the rights of others, but it cannot be doubted that rock and stone may under some circumstances be so severed from the land and removed as not in the slightest degree to inflict any injury which the law will recognize. So far as such use of one's property may be had without injury to others it is a lawful use which cannot be absolutely prohibited by the legislative department under the guise of the exercise of the police power.'' This court has even gone so far as to hold an ordinance void which prohibited the operation and maintenance of a rock-crusher in this same Arroyo Seco and situated only a short distance from the lands of the present plaintiff, the Los Angeles Rock & Gravel Company. (*In re Throop,* 169 Cal. 93 [145 Pac. 1029].) It will be noted, however, that in the present action the rock-crusher of the company is not located or operated upon any of the lands herein involved. The record shows that the company owns and maintains a rock-crusher on land situated to the south of the lands involved in the present action, and that it only seeks to excavate by means of an electric shovel rock, gravel and sand from its said land, which materials when so excavated are loaded upon trucks and transported to said rock-crushing plant of the company, where they are treated and prepared for commercial uses. We have already referred to the fact that in the action of *People* v. *Hawley* the trial court abated all nuisances of which complaint was made and which it was alleged and found were caused by the Los Angeles Rock & Gravel Company in their excavations upon the lands owned by it and comprising approximately one hundred and thirty acres. ■ The trial court found that to permit the company to continue its excavation operations upon said lands subject to the conditions imposed upon said operations by the judgment and decree in *People* v. *Hawley et al.* would not result in any substantial injury to adjoining property or to persons residing or owning property in the near vicinity of the lands of said company. Any ordinance of said city which would enjoin and prohibit the company from thus using its property is therefore void, as an unreasonable restraint upon the use by it of its property and an unwar-

ranted interference with the right of said company to carry on a lawful business and to use and enjoy its own property.

For the reasons expressed herein, that portion of the judgment in the case of *People* v. *Hawley et al.* (L. A. No. 9173), appealed from, is hereby reversed, and the judgments in *Los Angeles Rock & Gravel Co.* v. *The City of Los Angeles et al.* (L. A. No. 9174), and *Los Angeles Rock & Gravel Co.* v. *George E. Cryer et al.* (L. A. No. 9175), are, and each of said judgments is, hereby affirmed.

Shenk, J., Richards, J., Seawell, J., Waste, C. J., Preston, J., and Langdon, J., concurred.

Rehearing denied in causes L. A. No. 9174 and L. A. No. 9175.

All the Justices present concurred.