[Crim. No. 3631.    Second Dist., Div. Two.    Nov. 10, 1942.]

In re TED LAWRENCE, on Habeas Corpus.

Russell Pray and Samuel J. Nordorf for Petitioner.

Irving M. Smith, City Attorney (Long Beach), and Nowland M. Reid, Assistant City Attorney, for Respondent.

GOULD, J. pro tem.—Petitioner, arrested upon a complaint charging a misdemeanor in violation of a Long Beach municipal ordinance making it unlawful to maintain or have in possession a "pin game" or "marble game," initiated this proceeding asking this court by writ of habeas corpus to inquire into the cause and legality of his detention. His liberty is sought upon six separate grounds: (1) that the complaint upon which he was arrested does not state a public offense; (2) that the terms "pin game," "marble game" and other like expressions in the ordinance under which he is charged are not sufficiently definite and certain to inform persons of ordinary intelligence of the nature of the acts prohibited; (3) that the prohibition of the ownership or maintenance of such games has no relation to the public health, morals, safety or general welfare; (4) that enforcement of the ordinance deprives him of his property without due process; (5) that the ordinance is in conflict with and in violation of the general law of the state; and (6) that the ordinance because of its classifications is discriminatory.

All the above controversies center about section 235.02 of the penal ordinance in question, said section reading as follows: "Sec. 235.02. Possession of Certain Games Prohibited. It shall be unlawful for any person, firm or corporation to keep, maintain, possess or have under control in any place of business, or in any other place of public resort, either as owner, lessee, agent, employee, mortgagee or otherwise, any table game or device commonly known as a 'pin game,' 'pin ball game,' 'marble game,' 'one shot marble game,' 'horse race machine,' claw, scoop or grab machine, or any automatic pay-off machine, the operation, use or play of which is controlled by placing therein any coin, plate, disk, plug, key or other device, or by the payment of any fee."

Other sections of the ordinance declare that any machine or device maintained in violation of the above quoted section shall constitute a nuisance and be subject to abatement; that such abated machines shall be destroyed after judgment of conviction becomes final; that duly licensed ''penny arcades'' located in certain amusement zones shall be exempt from the operation of said ordinance; and that if any provision of the ordinance be held invalid, such decision shall not affect the validity of the remaining portions thereof.

The charging clauses of the complaint under which petitioner was arrested are substantially in the words of section 235.02 as set forth above, and specifically impute a violation of said section.

■ (1) Petitioner argues that because the possession and maintenance of a device of the class interdicted by the Long Beach ordinance is not *per se* a nuisance, and because the statutory law of the State of California does not denounce the possession thereof as unlawful, no public offense is charged by the complaint under which petitioner was arrested. In support of this argument reliance is had upon such cases as *In re Cohn,* 37 Cal.App.2d 39 [98 P.2d 769], and *Monterey Club* v. *Superior Court,* 48 Cal.App.2d 131 [119 P.2d 349]. In the Cohn case it was held that no public offense was charged where the defendant therein was accused of maintaining a public nuisance by keeping peacocks. The Monterey Club case had its genesis in a superior court action seeking to enjoin as a public nuisance the operation of a club where the game of draw poker for money was played. By writ of prohibition this court restrained the superior court from proceeding with injunctive action against the Monterey Club upon the grounds in essence that the game of draw poker was neither a public nuisance *per se* nor had it been declared by state law to be a public nuisance.

But petitioner herein apparently overlooks the fact that no question of public nuisance is involved in the present case. Here the city of Long Beach, within the scope of the authority conferred upon it by the Constitution of the State of California (§§ 6, 8 and 11, art. XI) and by its municipal charter (Stats. 1921, p. 2075), adopted an ordinance for the regulation and control of the games and devices mentioned in the foregoing quotation from section 235.02 of said ordinance. Within the corporate limits of Long Beach that ordinance has

the same force and effect as a statute passed by the Legislature has throughout the state. No question of nuisance, public or private, is involved. The city in adopting such an ordinance need not look to any declaration by the state legislative body as to whether or not the matter proposed to be regulated by ordinance has been classified by legislative pronouncement as a nuisance. Entirely independent of the question of nuisances, the legislative body of the city of Long Beach is vested with authority to adopt such ordinances as it may deem expedient for the promotion of public morals and the suppression of vice within its corporate limits.

Such power is as broad as public welfare (*State* v. *Mountain Timber Co.*, 75 Wash. 581 [135 P. 645, L.R.A. 1917D, 10]), is "coextensive with the necessities of the situation" (*In re Santos*, 88 Cal.App. 691 [264 P. 281]) and all property is subject to the proper exercise of the police power, as the Supreme Court declared in *Ex parte Quong Wo*, 161 Cal. 220 [118 P. 714]. · Indeed it has been repeatedly held that a business lawful in itself is not so protected, even by the Fourteenth Amendment, that it cannot be regulated out of business by the adoption of regulatory ordinances under the police powers. Such was the situation in the case of *Ex parte Murphy*, 8 Cal.App. 440 [97 P. 199], where the city of South Pasadena adopted an ordinance prohibiting the maintenance of poolrooms or billiard parlors for hire; and although the question was presented to the Supreme Court of the United States, petitioner in that case representing that he was being legislated out of his business and being deprived of his property without due process of law, no relief was afforded him, the highest court affirming the right of the local governing body to adopt the ordinance in question (*Murphy* v. *California*, 225 U.S. 623 [32 S.Ct. 697, 56 L.Ed. 1229]). Upon this proposition the Supreme Court of the state likewise has unequivocally declared itself that all property is held subject to the exercise of police power and that constitutional provisions against the impairment of contracts and the taking of property without due process of law have no application as against the right of duly constituted legislative bodies to regulate property in the proper exercise of the police powers. (*Odd Fellows Cemetery Assn.* v. *San Francisco*, 140 Cal. 226 [73 P. 987]; *In re Zhizhuzza*, 147 Cal. 328 [81 P. 955].)

With a host of citizen activities, from garbage collection to milk distribution, from conduct of games of chance to

operation of smokestacks, judicially approved as proper subjects of municipal regulation under the police power, it is difficult to follow petitioner in his argument that "pin ball" and "marble games" do not share the same liabilities as to regulation, or even suppression, that attend businesses within similar or analogous classifications and similarly circumstanced. If we bear in mind that no question of nuisance, public or private, is involved in the charge against petitioner, the problem resolves itself into one of simplicity. Plainly, petitioner was bound to know that his activity in maintaining the games in question, while lawful in itself, i.e., not interdicted by state or federal law, was yet subject to municipal regulatory measures within the scope of the police power conferred upon municipalities by the state Constitution and by statutory enactments.

(2) Petitioner's contention as to the uncertainty of the ordinance rests upon the claim that the terms "table game," "pin game," "pin ball game," "marble game," "one shot game," "horse race machine," etc., as used in the ordinance, do not convey such a definite and certain meaning that a person of ordinary understanding might know when he is violating its terms. It is true that the words which are the subjects of petitioner's complaint are not specifically defined in the ordinance before us. Neither are they elucidated in any statute or other piece of legislation called to our attention. But the detailed wording of the complaint, following the language of the ordinance, that the operation, use and play of the games was controlled by placing therein a coin, plate, disc, plug or other device, in and of itself constitutes a description of the machines sufficient to apprise one of their type and character, and, combined with the use of the names by which the games are popularly known, relieve the complaint of the charge of indefiniteness and vagueness. Quite certainly those who own, operate and maintain such games cannot seriously contend that they do not understand the import and meaning of the ordinance or of the complaint.

Indeed it can hardly be asserted that the terms are not generally known and understood. With the devices and machines described by the appellations used in the ordinance located in practically every business district in the state, one must truly be oblivious to his surroundings not to know of their existence and their names. In fact, the names used are so descriptive of the machines themselves that there can be

no uncertainty. ■ Knowledge that is generally possessed is the subject of judicial cognizance, and the courts will not shut their eyes and ears to the every-day happenings of contemporary life.

■ If judicial precedent is necessary on the point we refer to the Supreme Court decision in *People* v. *Carroll,* 80 Cal. 153 [22 P. 129], where the court held that such terms as "banking game" and "poker," although not defined in the statute, may be said to be "commonly known and understood," and therefore relieved the statute in question of the stigma of indefiniteness with which defendant in that case sought to characterize it. Similar reasoning applied here defeats petitioner's contention of vagueness, indefiniteness and uncertainty in the portion of the complaint defining the crime of which he is accused.

■ (3) In his argument on the point whether the ordinance here in review bears any real or substantial relation to the public health, morals, safety or general welfare (which it is admitted is the test to be applied to this inquiry), petitioner fails to discriminate between two classes of cases, one of which deals with ordinances which prohibit entirely lawful businesses and occupations and the other of which seeks only to regulate such businesses. Cases such as *People* v. *Hawley,* 207 Cal. 395 [279 P. 136]; *Pacific Rys. Adv. Co.* v. *Oakland,* 98 Cal.App. 165 [276 P. 629], and others of like tenor cited by petitioner, either expressly or in effect prohibit entirely the lawful businesses or occupations under consideration therein. In the case now before us, regulation, not prohibition, is decreed by the ordinance. The games are proscribed only in places of business or in any other "place of public resort," and exception is made of the amusement zones described in another Long Beach ordinance. In other words, "pin ball" and other games denominated in the ordinance may be maintained at private houses or in certain delineated amusement zones, but not generally in places of business or public resort. The ordinance is not prohibitory, but regulatory only, and as such is unquestionably within the scope and purview of the police power. A similar enactment in Alabama entirely prohibiting such machines was held by the Supreme Court of that state to be within the lawful exercise of the police power (*State* v. *One 5¢ Fifth Inning Baseball Machine,* 241 Ala. 455 [3 So.2d 27]); and as above pointed

out, in *Murphy* v. *California*, 225 U.S. 623 [32 S.Ct. 697, 56 L.Ed. 1229], South Pasadena municipal legislation prohibiting poolhalls for hire as unlawful was upheld by the Supreme Court of the United States. Similar regulatory ordinances without number have met with judicial approval. Even if the business regulated has not yet become injurious or offensive but in the sound discretion of the legislative body may become so, it is the proper subject of regulatory legisla- tion. (*In re Pedrosian*, 124 Cal.App. 692 [13 P.2d 389].)

In the case under consideration, with the prevalence of the devices, their tendency to foster the gambling instinct and their known temptation to school children and minors, it must be conceded that the governing body of the city of Long Beach had ample legal justification in curbing the business by the restrictive regulations imposed by the ordinance under attack.

█ (4) Petitioner's contention that the ordinance is unreasonable is answered in part by the citations in the above discussion as to his third point. Beyond that the reasonableness of the ordinance is largely a matter resting in the discretion of the legislative body; and with the sound exercise of that discretion "at the calm sea level, of common sense" it is not the province of courts to interfere. Respondent's contention as to the reasonableness of the ordinance here involved is further fortified by a consideration of decisions from other states involving similar devices: *Hunter* v. *Teaneck Township*, 128 N.J.L. 164 [24 A.2d 553]; *Savoy Vending Co.* v. *Valentine*, 178 Misc. 1 [33 N.Y.S.2d 324]; *Silfen* v. *City of Chicago*, 299 Ill.App. 117 [19 N.E.2d 640]; *State* v. *Wiley*, —— Iowa —— [3 N.W.2d 620]. In fact, we have been pointed to no opinion holding such regulation unreasonable.

█ (5) Petitioner's assertion that the ordinance is in conflict with the general laws of the state and therefore invalid rests upon the argument that it is in conflict with article XI, section 11 of the Constitution, and with statutory law as embodied in sections 370 and 372 of the Penal Code. The constitutional provision confers upon municipalities police powers not in conflict with general laws, and this has been held to be a limitation upon the power of municipalities. (*Ex parte Sic*, 73 Cal. 142 [14 P. 405].) That there may be different regulations without conflict between state and municipal enactments has been affirmed repeatedly (*Ex parte Hong*

*Shen,* 98 Cal. 681 [33 P. 799] ; *Ex parte Christensen,* 85 Cal. 208 [24 P. 747] ) ; and in the recent case of *National Milk Producers Assn.* v. *San Francisco,* 20 Cal.2d 101 [124 P.2d 25], the prevailing rule is epitomized that where the state "legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act . . . may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable.''

By this test it may be said without contradiction that the Long Beach ordinance assailed in this proceeding is in aid of the general law of the state prohibiting gambling and not in conflict with it.

As to the Penal Code sections cited, they relate to public nuisances, defining the term and prescribing punishment. No state act is cited denouncing the possession of pin ball machines, and we may assume that by its implied failure to pass an act covering this field the state concedes it to be within the province of municipal regulation.

In any event it cannot be said that the Long Beach ordinance is in conflict with any state law, in the sense that one convicted under the city ordinance might again be placed in jeopardy for violation of the state law.

Petitioner also contends that section 235.03 of the ordinance, providing for the seizure and destruction of machines under certain conditions, is in conflict with section 677 of the Penal Code, which declares that no conviction for crime shall work a forfeiture of property. It is a sufficient answer to this contention that, as disclosed by the record before us, no confiscation of petitioner's machines is sought in the proceeding here under review. If and when a case arises in which forfeiture of property is sought, the point may be aptly raised, but not here.

(6) As a final point of attack petitioner argues that the ordinance is invalid because it is discriminatory. This contention must rest upon the ground that the classification is improper and arbitrary and is not based upon some difference in the classes having a substantial relation to the purpose for which the legislation was designed. (*County of San Bernardino* v. *Way,* 18 Cal.2d 647 [117 P.2d 354] ; *Sacramento Mun.*

*U. Dist.* v. *Pacific Gas etc. Co.,* 20 Cal.2d 684 [128 P.2d 529].)
If a reasonable basis can be conceived for the classification
adopted by the legislative body, the ordinance cannot be over-
thrown upon the ground that it is discriminatory.

In the legislation under review it instantly occurs to one
that the provision restricting the public use of machines to
the established amusement zones can be reasonably justified
upon the ground that such zones can be more readily super-
vised and policed than would be the case if the devices were
scattered throughout the very considerable area of the entire
city, or even throughout its business district. This one reason
alone would seem to indicate sufficiently that the plea of
unreasonableness cannot be maintained. Aside from the
greater ease of policing the district to which machines are
confined, other good and sufficient grounds which conceivably
might and probably did appeal to the reason and good sense
of those charged with conducting and governing the affairs
of the municipality readily occur to one's mind as legal justi-
fication for the classification adopted in this case. Enough
is apparent by a mere superficial glance at the situation to
defeat petitioner's claim that the classification is so arbitrary
as to render the ordinance invalid.

From a careful consideration of all of petitioner's points,
we are convinced that nothing is presented to justify our
interference with the prosecution of the action against him.

The writ is discharged and petitioner remanded to the
custody of the chief of police of the city of Long Beach.

Moore, P. J., and Wood (W. J.), J., concurred.